**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Clark N. FISCHEL, Defendant-Appellant.**

No. 81–1453.

United States Court of Appeals,
Fifth Circuit.

Sept. 10, 1982.

Frank T. Ivy, Austin, Tex., for defendant-appellant.

Sidney Powell, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GOLDBERG, WILLIAMS and GARWOOD, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Clark Fischel was convicted by a jury of aiding and abetting the possession of cocaine with intent to distribute it in violation of 18 U.S.C. § 2.[1] On appeal, Fischel contends that the jury was instructed incorrectly and that he was prejudiced by the denial of access to a confidential informant before trial. Finding no reversible error, we affirm his conviction.

I.

Fischel's journey to this Court began when he entered into the net of an undercover operation in Austin, Texas. The operation relied in part on Jim Marlin, a former drug dealer in the Austin area who had volunteered to become a Drug Enforcement

---

**1.** 18 U.S.C. § 2(a) provides:

Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

Fischel was charged with aiding and abetting a violation of 21 U.S.C. § 841(a)(1), which provides:

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally...
to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

Agency (DEA) informant. Marlin cooperated with the DEA in hopes of gaining leniency. Marlin also received a per diem rate for his work and a bonus for each drug dealer who was eventually indicted. Marlin was teamed with a DEA agent named Dick Braziel.

On January 31, 1981, Marlin and Braziel set up shop in an Austin motel, the Chariot Inn. Marlin had targeted Austinite Bob Ludwig as a drug dealer, and had arranged for Ludwig to come to the Chariot Inn to meet a potential buyer. Unbeknownst to Ludwig, the buyer was an undercover Austin policeman, Russell Schmidt. Shortly before Ludwig was to arrive, Ludwig called Marlin at the Chariot Inn to say that he was bringing Clark Fischel with him. Marlin was acquainted with both Ludwig and Fischel.

Soon thereafter, Ludwig and Fischel arrived at the motel. Ludwig entered carrying a plastic bag containing cocaine. Ludwig began to unpack the goods and placed them on a counter top in the room. Fischel sat down on a bed opposite Schmidt. Marlin introduced Ludwig and Fischel to Schmidt; Schmidt was introduced as "R.L." Ludwig then handed the plastic bag containing cocaine to Schmidt. Marlin had told Ludwig that the buyer would purchase only a small sample—one quarter of an ounce of cocaine. It was evident to Schmidt, however, that the plastic bag handed to him by Ludwig contained considerably more and Schmidt pointed out this fact. Fischel then volunteered that it was an ounce and a half of cocaine.

In the ensuing conversation, Fischel and Schmidt negotiated about the terms of sale. Fischel not only identified the price of cocaine and its quantity, he also urged Schmidt to purchase the entire one and one half ounce bag. Schmidt resisted, saying he wanted a sample before purchasing a large quantity. Fischel maintained that he could procure up to four pounds of cocaine. He repeatedly refused, however, to sell less than the one and one-half ounce bag that he tendered. Ludwig finally piped up that he thought there would be no problem with

selling only one quarter of an ounce of cocaine. Ludwig then, with Fischel's approval, cut out one quarter of an ounce and weighed it. Schmidt tried to pay for the cocaine by handing $600.00 to Fischel, but Fischel told him, "No, give the money to Bob." A discussion was had about the possibility of doing more business together later. Fischel promised to call Schmidt later that evening, but no call in fact occurred.

The grand jury indicted Bob Ludwig with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and Clark Fischel with knowingly aiding and abetting Ludwig's offense. Fischel was arrested and brought to trial. Ludwig became a fugitive and, so far as the record indicates, remains at large. A jury found Fischel guilty of the offense charged.

## II.

Fischel asserts error in the judge's failure to instruct the jury on the defense of entrapment. Fischel argues that he presented enough evidence at trial to require the judge to submit an entrapment instruction, and his failure to do so compels reversal. We disagree.

Fischel's trial defense was unusual at the least. The keystone of Fischel's case was that although he participated in the cocaine transaction in essentially the fashion described by the government's witnesses, he did so as a joke. On Fischel's narrative, his involvement in the sale of cocaine was inadvertent. On the day of the sale, Ludwig, an employee of Fischel, requested that Fischel give him a ride because his car was broken down. Fischel reluctantly agreed to do so. On the way to their destination, Ludwig informed Fischel that the purpose of the venture was to complete a sale of cocaine. He described to Fischel the terms of the sale and the quantity of cocaine involved. Fischel had no desire to participate in the transaction, but gave Ludwig a ride because he felt sorry for him.

On arriving at the Chariot Inn, Fischel responded to Officer Schmidt's questions only because he knew the answers. Fischel testified that he was simply playing a prac-

tical joke and was lying when he asserted that he had access to four pounds of cocaine. On the witness stand, Fischel categorically denied having control over the cocaine, the right to sell it, or knowledge of its sources.

Fischel's story does not fit into the theory of entrapment. The essence of the entrapment defense is that a defendant should not be convicted for having committed a crime, without predisposition, only because of the government's creative activity in inducing the crime. *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); *United States v. Anderton*, 629 F.2d 1044 (5th Cir. 1980). *See also Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) "[W]hen the criminal design originates with the officials of the government, and they implant within the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute," the entrapment defense bars conviction. *Sherman v. United States*, 356 U.S. at 372, 78 S.Ct. at 820–21; *United States v. Anderton*, 629 F.2d at 1046.

Fischel argues that he was entrapped because of the following chain of circumstances: (1) The government had set up an undercover drug operation. (2) Jim Marlin, a government agent, induced Ludwig to recruit other drug buyers. (3) Ludwig became the government's unwitting pawn in luring victims to the trap. (4) Fischel, without predisposition to commit a crime, fell into the trap only because he was induced by his feelings of pity for Ludwig. Fischel argues that trial evidence supported each link in this chain and required the judge to allow the jury to consider his entrapment offense.

■ We recently articulated the burden of production on a defendant seeking an entrapment instruction.

In this circuit, before the judge must instruct the jury on entrapment, a defendant must show (1) lack of predisposition to commit the crime *and* (2) some governmental involvement and inducement more than just providing the opportunity or facilities to commit the crime. *United States v. Leon*, 679 F.2d 534, 538 (5th Cir. 1982) (emphasis in original). *See also United States v. Anderton*, 679 F.2d 1199, 1201 (5th Cir. 1982); *United States v. Andrew*, 666 F.2d 915, 922–23 (5th Cir. 1982). Moreover, to raise an entrapment defense the defendant must admit commission of the acts that are the subject of prosecution. *United States v. Nicoll*, 664 F.2d 1308, 1314 (5th Cir. 1982), *cert. denied*, —— U.S. ——, 102 S.Ct. 2929, 73 L.Ed.2d 1330 (1982); *United States v. Greenfield*, 554 F.2d 179, 181–82 (5th Cir. 1977).

■ Here, we need not consider whether Fischel presented evidence of his lack of predisposition, nor need we consider whether his inherently incredible "practical joker" defense admitted the criminal acts giving rise to prosecution enough to allow him to claim entrapment. We are satisfied that Fischel failed to show the trial court any evidence of governmental inducement of the crime.

Government inducement consists of " 'the creative activity' " of law enforcement officials in spurring an individual to crime. *Sherman v. United States*, 356 U.S. at 372, 78 S.Ct. at 820–21 (quoting *Sorrels v. United States*, 287 U.S. at 451, 53 S.Ct. at 216). The inducement need not overpower the defendant's will. "The entrapment defense does not require proof of threats or coercion. It presupposes deceit, not force." *United States v. Melchor Moreno*, 536 F.2d 1042, 1051 (5th Cir. 1976).

This case presents far less even than deceit. Fischel admitted that he voluntarily took Ludwig to the Chariot Inn knowing that a cocaine deal had been arranged. He also admitted to spontaneous and active participation in the transaction. The only "inducement" under Fischel's claim was his pity for Ludwig that caused him to give Ludwig a ride. Even if we assume that Ludwig was an ignorant pawn whose activi-

ty is attributable to the government, *United States v. Anderton*, 629 F.2d at 1047, Ludwig's entreaties to Fischel fell far short of inducement.

No better proof of the absence of inducement can be found than in Fischel's own words. On cross examination, Fischel explained why he gave Ludwig a ride:

Q: Did [Ludwig] in any way threaten you or coerce you to give him a ride over there?

A: He let me use his cassette deck—

Q: Would you answer my question. Did he threaten you or force you to do what you did?

A: Only by inference and feeling sorry for him.

Q: But, did he threaten you or coerce you?

A: He did not physically bodily threaten me, no, sir.

. . . . .

Q: So, in no way did he threaten you, and the reason you did it, is this correct? The reason you did it was because you felt sorry for him, and you just wanted to help him because he let you use his cassette recorder?

A: Yes, sir.

Fischel's only resistence to the cocaine deal, according to his own testimony, was when Ludwig first informed him of it. Ludwig told Fischel that he was taking some drugs to a friend and Fischel replied "I can't get involved in this." That appears to have been Fischel's first and last objection to participating in the sale. Fischel's overcoming of his reluctance because of pity for Ludwig does not represent evidence of government seduction of a defendant into the commission of a crime. Moreover, whatever one might think of Fischel's initial hesitation, he evinced no aversion to accompanying Ludwig to the scene of the cocaine deal nor to participating actively in hawking the wares. Neither Ludwig nor the purported buyers prompted Fischel to deliver his seller's pitch. The government simply provided an opportunity for Fischel to enmesh himself in a drug transaction. Merely furnishing such an opportunity does not constitute inducement. *Sorells v. United States*, 287 U.S. at 442, 53 S.Ct. at 212–13; *United States v. Andrew*, 666 F.2d at 924.

In sum, Fischel's story does not reveal the sinews of government power tightening on an unwilling victim. Rather, the most inducement that Fischel points to is his sympathy and pity for a friend. This is not a case where it is alleged that a government agent played upon a naive and easily manipulated person, making tactical use of his victim's pliable nature. Ludwig only asked for a ride; Fischel's motives in agreeing do not convert Ludwig's simple request into a government ploy. There is no other evidence of governmental stimulation of a crime in the record, and Fischel's testimony reveals no governmental inducement, suggestion, or creation of a crime. Because Fischel failed to meet his burden of production, the entrapment instruction was properly denied.[2]

■ Fischel argues another variation on his entrapment theme. Fischel maintains that, having raised the issue of entrapment, the government was obligated to rebut his defense by proving his predisposition to commit the crime beyond a reasonable doubt. *United States v. Webster*, 649 F.2d 346 at 348–49 (5th Cir. 1981). Fischel maintains that since the government failed to

---

**2.** Recent cases have referred to a possible discrepancy between two lines of Fifth Circuit decisions on how much evidence a defendant must present to meet his burden to get an entrapment instruction submitted to the jury. *United States v. Leon*, 679 F.2d at 539 n.5; *United States v. Andrew*, 666 F.2d at 922–24. One line of decisions apparently directs the trial judge to submit an entrapment instruction if the defendant advances any evidence supporting his assertions, regardless of how flimsy or insubstantial. *See Perez v. United States*, 297 F.2d 12 (5th Cir. 1961). An alternative view requires the defendant to produce "substantial evidence," which has been opaquely defined as more than just a smattering or scintilla. *See Pierce v. United States*, 414 F.2d 163 (5th Cir. 1969), *cert. denied*, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969). Since the application of both standards yields the same result in this case, we need not attempt to resolve this apparent controversy.

prove a disposition beyond a reasonable doubt, he was entitled to have his post-verdict motion for acquittal under Rule 29(a), Fed.R.Crim.P., granted. In view of our determination that Fischel failed to meet his burden to raise an entrapment defense, the government was not required to go forward and prove Fischel's predisposition to commit the crime. Therefore, Fischel's post-verdict motion for an acquittal on this ground was properly denied.

### III.

Fischel charges error in the district court's failure to submit an instruction on constructive possession. Fischel was charged with aiding and abetting the possession of cocaine with intent to distribute it. Conviction for this offense requires proof of (1) aiding and abetting the possession and (2) aiding and abetting the intent to distribute. Fischel argues that the jury could not properly focus on the possession prong of the offense without an instruction on constructive possession. Without such an instruction, Fischel maintains, the jury could convict without finding that Fischel aided and abetted *possession* of the cocaine as well as the intent to distribute it.

Both Fischel and the government requested a jury charge on constructive possession, indicating that both apparently believed that possession, constructive or actu-al, was necessary to sustain a conviction.[3] This supposition is in error. Constructive possession, when found to exist, plays the same role in a case as actual possession. That is, if the government were required to show that Fischel had actually possessed the cocaine, a showing of constructive possession would have been needed to meet the government's burden.[4] Possession of the cocaine by Fischel is irrelevant, however, to a charge of aiding and abetting Ludwig's possession of cocaine with intent to distribute it.

Aiding and abetting occurs "when a defendant 'willfully associated himself in some way with the criminal venture and willfully participated in it as he would in something he wished to bring about.'" *United States v. Phillips*, 664 F.2d 971, 1010 (5th Cir. 1981) *cert. denied*, —— U.S. ——, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982); *United States v. Ballard*, 663 F.2d 534, 542 (5th Cir. 1981); *United States v. Smith*, 631 F.2d 391, 395 (5th Cir. 1980); *United States v. Cowart*, 595 F.2d 1023, 1035 (5th Cir. 1979). To aid and abet, the defendant must share in the intent to commit the offense as well as participate in some manner to assist its commission, *United States v. Cowart*, 595 F.2d at 1035. The defendant need not, however, commit all elements of the substantive underlying offense as long as he aided and abetted each element. When a

---

**3.** Both the government and Fischel requested the submission of Devitt and Blackmar, Federal Jury Practice and Instructions, § 1607, which provides

The law recognizes two kinds of possession, actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.

A person who although not in actual possession, knowingly has both the power and the intention at a given time, to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

The law recognizes that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

You may find that the element of possession as that term is used in these instructions is present if you find beyond a reasonable doubt that the defendant had actual or constructive possession, either alone or jointly with others.

An act or failure to act is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

We have approved various portions of this charge, *see United States v. Ransom*, 515 F.2d 885, 890 (5th Cir. 1975), *cert. denied*, 424 U.S. 944, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1976).

**4.** We have defined constructive possession as "the knowing exercise of, or the knowing power or right to exercise, dominion and control over the proscribed substance." *United States v. Marx*, 635 F.2d 436, 440 (5th Cir. 1981); *United States v. Surface*, 624 F.2d 23, 25 (5th Cir. 1980).

defendant is shown to have aided and abetted each element of the substantive offense, he is punishable under 18 U.S.C. § 2 as a principal in the offense, as was Fischel in this case.

The district court delivered a basic, accurate, and concise charge incorporating the legal standards for convicting one as an aider and abetter.[5] In arguing that this charge was inadequate, Fischel relies heavily on two cases in which we reversed convictions because the government failed to prove that the defendant aided and abetted all elements of the underlying substantive offense. *United States v. Longoria*, 569 F.2d 422 (5th Cir. 1978); *United States v. Jackson*, 526 F.2d 1236 (5th Cir. 1976). Although these cases highlight the need for the government to tie the aider and abetter to all elements of the underlying offense, they do not support the proposition that a judge commits reversible error by failing to include an instruction that calls attention to the separate elements of proof.[6]

■ Here, unlike in *Jackson* and *Longoria*, the government did introduce sufficient evidence that Fischel aided and abetted both the possession and the intent to distribute a controlled substance. Fischel's active participation in urging Officer Schmidt to buy the cocaine suffices to carry the government's burden to show intent to distribute cocaine. Fischel's shared control

---

**5.** The trial court delivered the following charge to the jury:

Title 18 United States Code, Section 2, provides:

"Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal.

"Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

So if the acts or conduct of the agent, employee or other associate of the defendant or willfully directed or authorized by him, or if the defendant aids and abets another person in the commission of a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though he had committed the acts or engaged in such conduct himself.

Notice, however, that before any defendant may be held criminally responsible for the acts of others, it is necessary that the accused willfully associate himself in some way with the criminal venture, and willfully participate in it as he would in something he wishes to bring about; that is to say, that he willfully seeks by some act or omission of his to make the criminal venture succeed.

Of course, mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

. . . . .

In order to establish the offense proscribed by that statute, the government must prove each of the following elements beyond a reasonable doubt: First: that the defendant Robert G. Ludwig knowingly and willfully possessed cocaine as charged; and Second: that the defendant Robert G. Ludwig possessed the substance with the intent to distribute it. Third: that the defendant Clark Fischel knowingly and intentionally did aid and abet, counsel, induce and procure defendant Robert Ludwig's possession of cocaine with intent to distribute.

**6.** In *United States v. Longoria, supra*, we reversed a conviction because the government failed to show that the defendant aided and abetted another's intent to distribute a controlled substance. In *Longoria*, the defendant was a passenger who accepted a ride in a car she later discovered contained marijuana. At a border stop, the marijuana was detected. Both the driver and the passenger were indicted. The driver pleaded guilty to possession with intent to distribute. The passenger was convicted of aiding and abetting the driver's commission of the substantive offense. We reversed her conviction because the evidence, although flimsy on her assistance of the driver's possession of the marijuana, was utterly insubstantial on the issue of her shared intent to distribute it. We held that proof of aiding and abetting both the possession and the intent to distribute was required in order to sustain a conviction.

In *United States v. Jackson, supra*, the government presented sufficient evidence of the defendant's aiding and abetting the distribution of cocaine, but failed to present sufficient evidence that the defendant aided and abetted the possession of the cocaine. The defendant was not present at the sale, and there was no evidence to show he exercised any dominion or control or asserted some close relationship to the cocaine or to its possessor in relation to the cocaine. The absence of adequate proof on this point required us to reverse.

over the disposition of the cocaine when in the hotel room with Ludwig suffices to prove assistance to Ludwig in possession of the cocaine. Fischel need not have pulled the cocaine from his own pocket and maintained total control over it until the consummating of the sale to be found an aider and abettor of Ludwig's possession. As we have noted, Fischel need only have *helped* Ludwig's possession. The jury was warranted in concluding that Fischel aided and abetted both elements of the underlying crime. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Heffington,* 682 F.2d 1075, 1081–82 (5th Cir. 1982).

▮ We will not reverse a conviction for a trial court's failure to give a requested instruction if the charge, taken as a whole, reflects the legal issues accurately, *United States v. Nickerson,* 669 F.2d 1016, 1021 (5th Cir. 1982), and does not allow the jury to convict on an offense not charged in the indictment. *United States v. Irwin,* 661 F.2d 1063, 1070 (5th Cir. 1981). Because the charge delivered by the trial judge in this case adequately framed the legal issues and correctly reflected the substantive law on aiders and abettors, we find no cause to reverse. Concededly, the charge could have been more explicit in directing the jury to find that Fischel aided and abetted both the possession of cocaine and the intent to distribute it. But that alone is not enough to reverse. Few attempts to state the law concisely and in plain English could survive retrospective parsing designed to ferret out ambiguity.

## IV.

Finally, Fischel charges error in the court's failure to give Fischel access before trial to the government's informant, Jim Marlin. Confusion of the parties on the procedural background relevant to this claim clouds our resolution of this issue. After thoroughly probing the record and considering the policies that apply to this issue, we are persuaded that Fischel did not suffer prejudice justifying reversal of his conviction.

### A.

To place this issue in context, we review the procedural maneuvers that accompanied Fischel's attempts to gain access to Marlin. Fischel moved before trial for disclosure of Marlin's whereabouts and certain other information about Marlin. Fischel's particularized discovery motion alleged that the government knew Marlin's whereabouts and that Fischel's information about Marlin's address was stale. Fischel originally claimed he sought information pertaining to Marlin because of its potential relevance to Fischel's entrapment defense as well as its potential relevance to a pretrial motion to dismiss the indictment for governmental misconduct.[7]

In his discovery motion, Fischel alleged that Marlin was actively engaged in dealing in drugs in the Austin area with the knowledge and acquiescence of government agents. The agents allegedly winked at this activity because Marlin helped DEA agents to arrest other dealers. Fischel theorized that to keep the game going, Marlin had ample motive to arrange for the arrest of other "dealers," whether innocent or not. Fischel argued that proof of such facts would support both his entrapment theory and his governmental misconduct theory. Various Fifth and Sixth Amendment rights were invoked to require disclosure of Marlin's address.[8]

---

**7.** Fischel requested information about the law enforcement officers with whom Marlin had dealt in order to discover what benefits Marlin had received for his undercover work. Fischel also asked for specific information about rewards offered to Marlin that in any way related to the charges against Fischel and Ludwig. Finally, Fischel requested that the government provide the names of any person who knew about Marlin's illegal activity and the government's response to it.

**8.** Fischel argued that a denial of disclosure would violate the Fifth Amendment's due process clause and the Sixth Amendment's guarantees of a fair trial, effective assistance of counsel, confrontation of witnesses, and compulsory process. Fischel also cited *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215

The government's response to Fischel's motion for discovery revealed that the government viewed Fischel's requests as pertaining only to the motion to dismiss for governmental misconduct. The government asserted that it "will produce the informant at the trial on the merits or at any pretrial hearings if a subpoena for his person is given to the United States Attorneys' Office ten days prior to any such trial or hearing." The government refused, however, to provide Marlin's address.

The court held a hearing on Marlin's motion for particularized discovery and his motion to dismiss for governmental misconduct, among other motions. At this hearing Agent Braziel testified extensively on the government's involvement with Marlin and was subject to thorough cross examination. Fischel's attorney then argued the particularized discovery motion to the court. In the argument, Fischel's attorney narrowed the purpose of the motion for particularized discovery, arguing that Marlin's testimony was relevant only to the motion to dismiss for governmental misconduct. Fischel's attorney explicitly denied that the discovery motion dealt with entrapment or that access to Marlin might support an entrapment theory.

The government opposed Fischel's effort to put Marlin on the witness stand at the pretrial hearing. The government argued that Agent Braziel had fully revealed the extent of the government's involvement with Marlin and that other testimony on Marlin's drug dealing was not relevant. The government also emphasized that a defendant has no right to interview opposing witnesses before trial. Finally, the government contended that production of Marlin at trial would be sufficient to protect Fischel's rights. The government agreed to provide the defendant with any of Marlin's statements at that time.

Three days before trial, the court denied Fischel's motion for particularized discovery. The court never specifically ruled on the motion to dismiss for governmental misconduct. The record indicates, rather cryptically, that the motion was "mooted" by the trial and verdict. Marlin appeared at the trial itself but neither side called him as a witness and he did not testify.

From this thicket emerge two different, although related, issues. First, there is the issue of the government's failure to divulge Marlin's address in response to the particularized discovery motion. Second, there is the issue of the court's refusal to allow Fischel to call Marlin to the witness stand at the pretrial hearing. Because somewhat different considerations control the disposition of these matters, we take them up separately.

## B.

■ We turn first to the discovery motion. Discovery in criminal cases is narrowly limited. In large measure, it is governed by the Federal Rules of Criminal Procedure. The divulgence of Marlin's address to Fischel was not required by any federal rule. Rule 16, which addresses the scope and manner of criminal discovery, makes no provision for the production of the names and addresses of witnesses for the government.[9] Nor does Rule 7(f), which authorizes a motion for a bill of particulars, provide a means for acquiring a witness list. *See United States v. Pena*, 542 F.2d 292, 294 (5th Cir. 1976). *Cf. Roviaro v. United States*, 353 U.S. 53, 65 n.15, 77 S.Ct. 623, 630 n.15, 1 L.Ed.2d 639 (1957) (when indictment alleges a sale of narcotics to a confidential

(1963) (prosecution has an obligation to disclose exculpatory material), and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (discussing the specificity required of the defendant in requesting exculpatory material).

9. *See* Conference Committee Notes, House Report No. 94–414 ("a majority of the conferees believe it is not in the interest of the effective administration of criminal justice to require that the government or that the defendant be forced to reveal the names and addresses of its witnesses before trial. Discouragement of witnesses and improper contact directed at influencing their testimony, are deemed paramount concerns in the formulation of this policy"). *See also* 1 C. Wright, Fed.Prac. & Pro. § 254 at 517 (1969 & Supp.).

informant, a bill of particulars may be used to acquire the name and address of the informant). Moreover, unlike in civil cases, the Federal Rules of Criminal Procedure provide no broad right to take depositions. Rule 15, which governs deposition procedure, permits a deposition to be taken by a party only of his own witness when that witness will be unavailable for trial. *See In Re Eisenberg*, 654 F.2d 1107, 1113 n.9 (5th Cir. 1981). Depositions are not discovery tools in criminal cases. Finally, while a court may require production of a witness list on the defendant's request, the court is curbed only by its own discretion. *United States v. Edmonson*, 659 F.2d 549 (5th Cir. 1981); *United States v. Moseley*, 450 F.2d 506, 510 (5th Cir. 1971), *cert. denied*, 405 U.S. 975, 92 S.Ct. 1200, 31 L.Ed.2d 250 (1972). Thus, the federal rules provide no avenue to force disclosure of the address of a government informant.

The federal rules are not the only source for criminal discovery, however. While "[t]here is no general constitutional right to discovery in a criminal case..." *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977), in certain circumstances due process, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (exculpatory material) or the supervisory powers of the courts, *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) (confidential informants with relevant and helpful information) have been found to require divulgence of information in the government's hands. We must consider, therefore, whether our supervisory powers or the Constitution place limits on the government's authority to withhold the address of the informant in this case.

The seminal case is *Roviaro v. United States, supra.* In *Roviaro*, the Court recognized that the governmental privilege to protect the confidentiality of informants must yield to the defendant's right to prepare his defense [10] and to the requirements of a fair trial. The determination whether the government must reveal an informant's identity involves a balancing test:

We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

353 U.S. at 62, 77 S.Ct. at 628–29. *See United States v. Diaz*, 655 F.2d 580, 586 (5th Cir. 1981); *cert. denied*, 455 U.S. 910, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982); *United States v. Ayala*, 643 F.2d 244, 246 (5th Cir. 1982). Thus, even when the government has an interest in preserving the confidentiality of an informer's identity, the needs of the defense may override that interest and mandate disclosure.

Here, however, the government had no interest in cloaking Marlin's identity in secrecy because Fischel already knew who Marlin was. As the *Roviaro* court stated, "[O]nce the identity of the informer has been disclosed to one who would have cause to resent the communication, the privilege is no longer applicable." 353 U.S. at 60, 77 S.Ct. at 627 (footnote omitted). Since Marlin's identity was not secret, *Roviaro*'s balancing test does not apply to Fischel's request for Marlin's address. Instead, the issue narrows down to whether the government may withhold the address of an informant who is known to the defendant, when to do so presumably renders the defendant unable to seek an interview with the informant while the government has free access to him.

---

**10.** Although the *Roviaro* court was impelled by "fundamental requirements of fairness," 353 U.S. at 60, 77 S.Ct. at 627, the Supreme Court has since recognized that "*Roviaro* would not have been decided differently if [constitutional] claims had actually been called to the court's attention." *United States v. Valenzuela-Bernal*, —— U.S. ——, ——, 102 S.Ct. 3440, 3448, 73 L.Ed.2d 1193 (1982); *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

■ We begin by noting that no witness is obligated to honor a defendant's request for an interview. *See United States v. Opager*, 589 F.2d 799, 804 n.11 (5th Cir. 1979). But it is a different matter for the government to place a defendant at a tactical disadvantage by reserving to itself alone the ability to request an interview with a material witness. We recognized the significance of a pretrial interview in *United States v. Opager*, in which the government's refusal to turn over an informant's address in violation of court orders required us to reverse:

> The importance to a litigant of interviewing potential witnesses is undeniable. In particular, in criminal cases, where a defendant's very liberty is at stake, such interviews are especially crucial. Thus it is that one of the first things responsible counsel does in preparing a case is to seek to interview those witnesses involved in the litigation.

589 F.2d at 804. As the Supreme Court has noted, "The witness' name and address open countless avenues of in-court examination and out-of-court investigation" *Smith v. Illinois*, 390 U.S. 129, 131, 88 S.Ct. 748, 750, 19 L.Ed.2d 956 (1968) (defendant had a right to cross-examine government witness as to his name and address). Thus, "[w]hen a defendant makes a request for information concerning an informant's whereabouts, the government should comply promptly, unless it asserts a privilege under *Roviaro* not to do so,"[11] *United States v. Ariza-Ibarra*, 651 F.2d 2, 13 (1st Cir. 1981) cert. denied, 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981). As the *Roviaro* Court made clear, "the desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial [is] a matter for the accused rather than the government to decide." 353 U.S. at 64, 77 S.Ct. at 629.

■ We do not imply that the government must, upon request, automatically furnish the address of an informant whose identity is not a secret from the defendant. The need for the informant's safety, the avoidance of jeopardizing other operations, or the defendant's ability to locate the informant himself, for example, may justify nondisclosure of the informant's address. While the confidential informant privilege under *Roviaro* evaporates when the informant is known to defendant, we do not rule out other valid reasons that the government might advance against turning over the informant's address. The government, however, must suggest these reasons to the court. The government here failed to allege any reason for withholding Marlin's address from Fischel, and without such an allegation, the address should have been supplied.[12]

11. *United States v. Hughes*, 658 F.2d 317 (5th Cir. 1981) cert. denied, 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982), suggested that a defendant would desire an informant's address only for two purposes: to flesh out the informer's background for impeachment purposes and to locate the witness for service of a subpoena. 658 F.2d at 321. These two purposes do not exhaust the reasons for a defendant to seek informer's address, however. Few defense counsel would wish to learn a witness' story for the first time when the witness is on the stand at trial. To attempt to interview a prospective witness before trial is the usual and better practice. *See United States v. Opager*, 589 F.2d at 804. The desire for a pretrial interview constitutes a justification for disclosing an informant's address even when the government has agreed to produce the informer at trial and has agreed to supply background material when the informer testifies.

12. We do not decide how specific or how well-supported the government's allegations must be to warrant withholding the informant's address. We have recognized that the government frequently seeks to preserve some aspect of confidentiality about its informants even when the defendant knows the informant's identity. *See United States v. Hughes*, 658 F.2d 317, 321 (5th Cir. 1981), *cert. denied*, 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). We hold only that at least some valid reason must be offered by the government for declining to turn over the informant's address. *See United States v. Opager*, 589 F.2d at 805, in which we rejected the government's reasons for withholding informant's address as insubstantial.

We also note that when a trial court does recognize a valid government interest in withholding a known informant's address, the court should consider the needs of the defense for an interview with the informant and the feasibility of making the informant available for an interview under conditions that protect the government's confidentiality interest. *See United*

Improper denial of a discovery request, however, does not dictate that we reverse Fischel's conviction. For Fischel to gain reversal of his conviction, he must show prejudice to his defense from the denial of Marlin's address.[13] *United States v. Ariza-Ibarra*, 651 F.2d at 14–15; *Ashley v. Wainwright*, 639 F.2d 258 (5th Cir. 1981) (negligent concealment of a witness is not reversible error when the defendant fails to show prejudice from the absence of the missing witness' testimony); *United States v. Opager, supra* (the government's violation of a court order to disclose an informant's whereabouts required reversal because of prejudice to the defendant).

Our holding that a defendant must show some prejudice is supported by the Supreme Court's most recent pronouncement on "what might loosely be called the area of constitutionally guaranteed access to evidence," *United States v. Valenzuela-Bernal*, —— U.S. ——, ——, 102 S.Ct. 3440, 3447, 73 L.Ed.2d 1193 (1982). In *Valenzuela-Bernal,* the government deported two witnesses to the defendant's crime before trial and before the defendant had a chance to interview them. After this conviction, the defendant appealed, urging that the deportation violated his rights under the compulsory process clause of the Sixth Amendment and the due process clause of the Fifth Amendment. The Court held that to establish reversible error when the government deports witnesses before the defendant has an opportunity to interview them, defendant must make "a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." —— U.S. at ——, 102 S.Ct. at 3449–50.

In reaching this conclusion, the Court relied on a series of cases that stress the defendant's burden to show prejudice to his defense from evidence withheld by the government or lost before trial. *See Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) (compulsory process clause); *Brady v. Maryland, supra,* (exculpatory evidence); *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) (preindictment delay); *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (speedy trial clause). The cumulative theme of these cases is that a defendant's loss of access to evidence does not warrant reversal unless the evidence is favorable, material, and irreplaceable. Applying this test to our case, the denial of Marlin's address prejudiced Fischel only if the information that Fischel sought to elicit from Marlin was likely to be material to his defense, favorable, and unavailable from other sources. We conclude that Fischel did not make such a showing and was unable to do so.

Marlin's testimony did not bear on Fischel's guilt or innocence. As framed by Fischel's counsel at the pretrial hearing, the discovery request bore only on Fischel's motion to dismiss for governmental misconduct and not on the issue of entrapment at all.[14] We have acknowledged that "[c]ases

States v. Bower, 575 F.2d 499, 502–03 (5th Cir. 1978), *cert. denied*, 439 U.S. 983, 99 S.Ct. 572, 58 L.Ed.2d 654 (1978).

**13.** This is not a case in which the government deliberately concealed an eye-witness to the crime or otherwise acted in bad faith. *See Clark v. Blackburn*, 632 F.2d 531 (5th Cir. 1980); *Freeman v. Georgia*, 599 F.2d 65 (5th Cir. 1979), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 661, 62 L.Ed.2d 641 (1980). There is, therefore, no presumptive showing of a Due Process violation.

**14.** While Fischel's motion originally dealt with entrapment as well as governmental misconduct, at the pretrial hearing, Fischel's counsel focused exclusively on governmental miscon-

duct. The issue of the relevance of the discovery motion to entrapment was thus waived. We do not reach the question whether the denial of the confidential informant's address might have prejudiced Fischel's entrapment defense. The denial of the evidence in that context would raise serious concerns about Fischel's ability properly to set up his defense. *See United States v. Bower*, 575 F.2d 499, 503 (5th Cir. 1978) (when an entrapment defense is raised, the defendant's need for access to a confidential informant generally outweighs the government's interest under *Roviaro* ), *cert. denied*, 439 U.S. 983, 99 S.Ct. 572, 58 L.Ed.2d 654 (1978).

may arise at which the government's conduct is so egregious as to violate due process," *United States v. Nicoll,* 664 F.2d 1308 (5th Cir. 1982); —— U.S. ——, 102 S.Ct. 2929, 73 L.Ed.2d 1330 (1982); *United States v. Sudderth,* 681 F.2d 990 (5th Cir. 1982); *Williamson v. United States,* 311 F.2d 441 (5th Cir. 1962). *See Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). We do not believe, however, that the denial of Marlin's address in this case prejudiced Fischel in attempting to show governmental misconduct.

Fischel's theory of governmental misconduct was that the government's tolerance of and acquiescence in Marlin's extra curricular drug dealing made an indictment based on Marlin's work outrageous. Fischel had an opportunity to support this theory at a pretrial hearing. At that hearing, Agent Braziel testified fully about the extent of drug dealing in which Marlin engaged with the government's knowledge. Nothing excessive is revealed by Braziel's testimony.[15]

It is universally recognized that paid informants who are immersed in the drug subculture must be used to ferret out those who deal in narcotics. Law enforcement officials cannot be expected to rely only on informants with pristine characters. We see no evidence here that the DEA cynically allowed an informant to deal drugs as a reward for the tip-offs passed along to the authorities. That Marlin may have traded in narcotics to establish his credibility does not, by itself, amount to outrageous governmental behavior. In fact, such conduct may well be necessary to the law enforcement enterprise. Far more serious governmental encouragement of drug trafficking by a paid informant must be shown before an indictment based on the informant's work should be dismissed.

While we are not prepared to hold that hearsay testimony through government agents is always sufficient at a pretrial hearing in which guilt or innocence is not to be determined, *see McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967),[16] here we see little that Fischel could have added to his case by personally interviewing Marlin before the hearing. The essential issue in Fischel's governmental misconduct motion was the extent of the government's tolerance of Marlin's drug dealing. Agent Braziel's testimony reveals what the government knew of Marlin's activity. While a personal interview with Marlin might have exposed more activity by Marlin, such activity would not be relevant to Fischel's motion if the government was unaware of it. There is no assertion that Braziel's testimony was untrustworthy or inadequate on this point. The assertion rather is one of an automatic right of access to Marlin. While it may have been desirable for Fischel to have interviewed Marlin, the loss of this opportunity did not work any prejudice to Fischel.

### C.

Fischel also complains of the trial court's refusal to allow Marlin to be called to the stand at the pretrial hearing. From what we have said above about the government's refusal to disclose Marlin's address, it is clear that the court's conduct of the pretrial hearing without Marlin does not require us to upset Fischel's conviction.[17]

---

**15.** Braziel testified to the terms of the agreement Marlin had made with the government and with the government's knowledge of various drug charges against Marlin. Braziel also testified that in a transaction unrelated to Fischel, Marlin had put together marihuana sellers in Austin with marihuana buyers in Dallas and had received $400.00 consideration for his work in so doing from the buyers. Braziel indicated that Marlin kept that money.

**16.** In *McCray,* the defendant sought to elicit the name and address of an informer at a hearing on a motion to suppress evidence. The Su-

preme Court affirmed the trial court's refusal to require production of the informer's name. The court emphasized the lesser need for non-hearsay testimony at a hearing on a motion to suppress evidence as opposed to the trial on the merits. 386 U.S. at 311, 87 S.Ct. at 1062.

**17.** In view of the government's assertion in its response to Fischel's pretrial motion that it would permit Marlin to take the stand at any pretrial hearing, the government's abrupt about-face when confronted with an actual request to do so is disturbing. The motion to bring Fischel to the stand, however, was ad-

This is not a case in which the court prevented the defendant from calling a known informant to the witness stand at trial. *See United States v. Godkins*, 527 F.2d 1321 (5th Cir. 1976). Fischel had full access to Marlin at trial. Rather, the issue is whether the trial court was required to allow the defendant to put a known informant on the witness stand at a pretrial hearing on a motion to dismiss for governmental misconduct.[18]

The trial court must, of course, have discretion in deciding how extensive a hearing to allow on a pretrial motion. After all, the court is not required to hold an evidentiary hearing on pretrial motions at all. *See United States v. Saade*, 652 F.2d 1126, 1136 (1st Cir. 1981); *United States v. Cohen*, 489 F.2d 945, 952 (2d Cir. 1973). In deciding whether to allow Fischel to place Marlin on the witness stand, the court was entitled to consider the relevance of Marlin's testimony, its duplication of other sources, and the degree to which Fischel sought to use the pretrial hearing as a discovery device in circumvention of the federal rules.[19]

We find that the district court did not abuse its discretion in declining to allow Fischel to bolster his pretrial motion with Marlin's testimony. The court was entitled to find that Agent Braziel's testimony was sufficient to enable to it to rule on Fischel's pretrial motion to dismiss for governmental misconduct. The record reveals that Fis-chel had an adequate opportunity to explore the factual basis for his motion through cross-examination of Agent Braziel.[20] Fischel also informed the court what he hoped to prove through Marlin. Based on the testimony of Braziel and the offer of proof, the court was reasonable in finding that Marlin's testimony was not essential to Fischel's task, nor helpful to the court in resolving the motion.

If we were to hold that a defendant has an absolute right to put any government witness on the stand at a pretrial hearing, regardless of the relevance or helpfulness of his testimony to the motion at issue, we would open a door to discovery through which every defendant would soon walk. Defense counsel would be free to subpoena every potential prosecution witness and start asking questions, placing the burden on the government and the court to try to limit the scope of the questioning to the relevant issue or issues. Pretrial hearings on motions to dismiss indictments are not discovery mechanisms. To keep discovery within the channels marked out by the federal rules, we believe that the district court must be permitted to restrict the scope of pretrial hearings to those witnesses necessary to decide the motion before it.[21]

## CONCLUSION

We hold that the district court properly denied an entrapment instruction, that

dressed to the court, not to the government. We therefore review only the actions of the court in declining to permit Fischel to call Marlin to the witness stand at the pretrial hearing.

18. At oral argument, Fischel asserted that he had subpoenaed Marlin to appear at the pretrial motion's hearing. Our review of the record does not disclose such a subpoena. We nevertheless assume for purposes of this case that such a subpoena had been issued to Fischel.

19. While a court may not control the defenses raised by a defendant, nor unduly hinder the defendant in proving them, it is settled that a court may determine that a given witness has nothing relevant to add to the defendant's case and therefore need not be subpoenaed at trial at government expense. *United States v. Hegwood*, 562 F.2d 946 (5th Cir. 1977), *cert. denied*, 434 U.S. 1079, 98 S.Ct. 1274, 55 L.Ed.2d 787 (1978). If a defense witness may be excluded at trial because he has nothing relevant and helpful to add, the court cannot have lesser powers at a pretrial hearing that does not bear on guilt or innocence.

20. The trial judge was within his powers in relying on hearsay testimony at a pretrial proceeding. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (hearsay testimony is admissible in a pretrial hearing on a motion to suppress evidence).

21. We recognize that when a defendant makes a prima facie showing of the necessity of a witness' testimony to the disposition of a pretrial motion, the district court may be required to allow the witness to testify at the pretrial hearing.

there was no error in the aider and abettor charge to the jury, and that Fischel was not prejudicially denied the address of a government informant known to him nor was he prejudiced by the court's refusal to allow the informant to be called as a witness at a pretrial hearing. Accordingly, the judgment below is

AFFIRMED.