**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Roy POZOS and Noble Lee Simpson, Defendants-Appellants.**

No. 82–1294
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Feb. 1, 1983.

---

Don W. King, Jr., San Antonio, Tex., for Roy Pozos.

Goldstein, Goldstein & Hilley, Gerald H. Goldstein, Robert B. Hirschhorn, San Antonio, Tex., for Noble Lee Simpson.

Sidney Powell, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

In the appeal that is now the almost inevitable sequel to conviction of a criminal offense, the defendants assert that the evidence was insufficient to convict either of them and contend that the court should have granted one defendant a change of venue and should have suppressed certain evidence. Finding no merit in the defendants' contentions, we affirm.

## I.

Defendants Roy Pozos and Noble Simpson were indicted on charges of conspiracy to possess and distribute methaqualone in violation of 21 U.S.C. § 846 (1976), and complicity in possessing the same drug with intent to distribute. 21 U.S.C. § 841(a)(1) (1976); 18 U.S.C. § 2 (1976). Simpson alone was indicted for carrying a firearm during the commission of a felony in violation of 18 U.S.C. § 924(c)(2) (1976). In a bench trial, each was convicted on all counts.

Construed most favorably to the prosecution, as the evidence must be in view of the verdict, the record reflects support for the following version of events. Pozos first met Gonzales, an undercover DEA agent, on September 21, 1981, at a San Antonio restaurant. They discussed the possible sale to Gonzales of a large quantity of quaaludes. Pozos assured the agent that he could supply the pills. Gonzales indicated that he wanted to sample the merchandise before purchasing a large amount. Pozos replied that the transaction would take place in Austin because his associates were from that area.

Later that day, Pozos telephoned Gonzales and told him that the sample was ready. The two men met at a restaurant in Austin; they later went to a lounge. There Pozos introduced Gonzales to Burnett. The three men discussed the packaging of the pills and the organization in Austin. Pozos told Gonzales that he was a distributor of quaaludes in Austin and that, although he rarely divided packages, he would furnish a sample of five or six pills. Burnett left to place a phone call. On his return, he told Gonzales to expect the sample that afternoon. Pozos departed, stating that he was going to Houston.

Agent Gonzales and Burnett went to Burnett's apartment. Burnett placed another phone call. Simpson arrived shortly thereafter. Burnett advised Simpson that Gonzales was interested in purchasing large quantities of quaaludes. Gonzales stated that he wanted a sample. Simpson went into the bathroom and returned, stating that there was "something strange in the bathroom." Gonzales had visited the bathroom earlier and had not then seen any pills there. When he returned to the bathroom with Burnett, however, they found a bag of pills on top of the commode tank. Simpson indicated that the bag contained one hundred quaaludes. Gonzales replied that he was satisfied and would purchase everything Simpson had available.

Simpson told Gonzales that he would deliver approximately 150,000 pills packaged in five boxes of thirty thousand each. Gonzales was to communicate with Burnett when he was ready for the purchase. Late that night, Gonzales telephoned Burnett, stated that his buyers were satisfied with the sample, and said he wanted to purchase 150,000 pills.

The following day, Gonzales and two undercover police officers arrived in Austin, checked into a hotel, and telephoned Burnett. Gonzales and Burnett met at a restaurant adjacent to the hotel. Gonzales told Burnett that his purchasers were at the hotel. Burnett arranged to have Simpson deliver 30,000 pills that night and an additional 120,000 the following morning.

Simpson met the two agents and the officer in the hotel parking lot. He said that there were too many people around. Simpson, therefore, drove away, motioning for Gonzales to follow. Gonzales followed to a Holiday Inn parking lot. Gonzales told Simpson that he wanted to see the drugs. Simpson opened the trunk of his automobile to show Gonzales a box of 30,000 quaaludes. Gonzales opened the box to be certain that the pills were inside. They were. Simpson was then arrested. The officers, searching Simpson pursuant to his arrest, found that he was carrying a loaded pistol.

## II.

Pozos challenges the sufficiency of the evidence to sustain his conviction on each of the three counts. Simpson challenges only the sufficiency of the evidence supporting his convictions for possessing, with intent to distribute, the quaaludes found in the bathroom and possessing a firearm during the commission of a felony.

Our standard of review for sufficiency of the evidence after a bench trial is "whether the evidence is sufficient to justify the trial judge, as trier of facts, in concluding beyond a reasonable doubt that the defendant

was guilty." *United States v. Niver,* 689 F.2d 520, 529 (5th Cir.1982); *Gordon v. United States,* 438 F.2d 858, 868 n. 30 (5th Cir.), *cert. denied,* 404 U.S. 828, 92 S.Ct. 139, 30 L.Ed.2d 56 (1971); *United States v. Hull,* 437 F.2d 1, 3 (5th Cir.1971); *see generally* 2 C. Wright, Federal Practice and Procedure § 374 (1982). "Our task is not to reweigh the evidence or to determine the credibility of the witnesses, and we must affirm the verdict if it is supported by substantial evidence." *Niver,* 689 F.2d at 529.

### A. *Conspiracy*

██ To prove a conspiracy, the government need only demonstrate that an agreement to commit a crime existed, and the defendant knew of, intended to join, and participated in the conspiracy. *See United States v. Nanez,* 694 F.2d 405 (5th Cir.1982); *United States v. Vergara,* 687 F.2d 57, 60 (5th Cir.1982); *United States v. Glasgow,* 658 F.2d 1036, 1040 (5th Cir.1981). The government demonstrated through Agent Gonzales' testimony that Pozos met with the agent and agreed to supply him with a large number of quaaludes. Pozos introduced Gonzales to Burnett who, together with Simpson, in fact supplied the quaaludes. Pozos discussed the terms and cost of the sale with Gonzales. He indicated that he received a commission on the sale of each quaalude. The evidence of Pozos' involvement in this drug conspiracy was clearly sufficient to warrant his conviction under 21 U.S.C. § 846.[1]

### B. *Possession With Intent To Distribute—September 21*

Both Simpson and Pozos were convicted of aiding each other in the possession, with intent to distribute, of the quaaludes "found" in Burnett's bathroom on September 21. Each challenges the sufficiency of the evidence to sustain his conviction on this count.

---

1. Pozos originally challenged the sufficiency of the evidence supporting the conspiracy count in a brief filed before the entire record was transcribed. Subsequently, a supplemental

transcript was filed. In his "Reply/Supplemental Brief", Pozos concedes that, in light of the entire trial record, his challenge to the conspiracy count is "untenable."

■ The crime of aiding and abetting the possession of a drug with intent to distribute requires proof of two elements: "(1) aiding and abetting the possession and (2) aiding and abetting the intent to distribute." *United States v. Fischel*, 686 F.2d 1082, 1087 (5th Cir.1982). A defendant aids and abets the commission of a crime when he "willfully associate[s] himself with the criminal venture and willfully participate[s] in it as he would in something he wished to bring about." *Fischel*, 686 F.2d at 1087; *United States v. Phillips*, 664 F.2d 971, 1010 (5th Cir.1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982); *United States v. Ballard*, 663 F.2d 534, 542 (5th Cir.1981), *modified on other grounds*, 680 F.2d 352 (5th Cir.1982). It must be proved that the defendant aided and abetted each element of the underlying substantive offense. *United States v. Longoria*, 569 F.2d 422, 425 (5th Cir.1978); *United States v. Jackson*, 526 F.2d 1236 (5th Cir. 1976).

■ There was ample evidence to sustain Simpson's conviction. Indeed, the natural inference from the testimony is that Simpson placed the quaaludes in question on the commode in the bathroom so that Agent Gonzales could discover them. This is sufficient evidence to sustain the district court's conclusion that Simpson possessed the quaaludes and intended to distribute them.[2]

There is more question about the sufficiency of the evidence to sustain Pozos' conviction on this count. Although his initial negotiation of the quaalude transaction with Agent Gonzales provides sufficient evidence of an intent to distribute, this is only one of the elements. The government was also required to prove that he aided in the possession of the drugs. And evidence that Pozos helped to arrange the sale, without more, would not suffice on the possession element. *Jackson*, 526 F.2d at 1237.

Nevertheless, we find sufficient record evidence to sustain a finding that Pozos aided in the possession of the quaaludes. He discussed the terms of the sale with Agent Gonzales. He stated that samples of the drug could be supplied. From this, the district court could have found that Pozos shared control, with Simpson and Burnett, over the disposition of the quaaludes. This is sufficient to constitute aiding possession under section 841(a)(1). *Fischel*, 686 F.2d at 1089. Whether Pozos was present when the actual distribution was made is irrelevant. He is charged with complicity in Simpson's possession of the quaaludes. The question is not whether he actually possessed the pills; it is whether he helped Simpson possess them. *Id.*

C. *Possession With Intent To Distribute— September 22*

■ Pozos contests his conviction for complicity in the possession, with intent to distribute, of the quaaludes found in Simpson's trunk on September 22. The argument is without merit. Simpson clearly possessed the drugs and intended to distribute them to Agent Gonzales. That Pozos aided in this unlawful possession was established by testimony that he arranged the original meeting between Burnett and Gonzales, the purpose of which was to negotiate the September 22nd sale. Pozos' introduction of Gonzales to Burnett and the arrangements concerning the meeting establish his complicity in the September 22nd possession.

III.

Simpson now concedes in his brief that he traveled from Killeen, Texas, to Austin with the controlled substance and a firearm. He nevertheless contends that the evidence to support his conviction for illegal possession of a firearm during the commis-

---

**2.** Indeed, Simpson does not dispute the inference raised by this evidence. Instead, he argues that his conviction cannot be sustained unless the circumstantial evidence excludes every reasonable hypothesis except his guilt. This simply is not the applicable standard. We must affirm the sufficiency, in both circumstan- tial and direct evidence cases, so long as "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 & n. 3 (5th Cir.1982) (en banc), *cert. granted on other grounds*, —— U.S. ——, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982).

sion of a felony was insufficient because the Texas Penal Code exempts travelers from criminal liability and he was just such a traveling man.

■ To prove a violation of 18 U.S.C. § 924(c)(2) (1976), the government must demonstrate that the act of carrying the firearm violated a state, federal or local law. *See United States v. Nanez,* 694 F.2d 405, 411, n. 3 (5th Cir.1982); *United States v. Risi,* 603 F.2d 1193, 1196 (5th Cir.1970). Under applicable state law, anyone carrying a handgun is guilty of a crime unless that person falls within specific exceptions. Texas Penal Code Ann. § 46.02(a) (Vernon 1974).[3] "[I]t is a defendant's burden to prove that he comes within one of the enumerated exceptions of § 46.02(a) and, absent such proof, the government need only show that a defendant was carrying a firearm while committing a felony to establish a *per se* violation of 18 U.S.C. § 924(c)(2)." *Nanez,* 694 F.2d at 411; *United States v. Elorduy,* 612 F.2d 986, 990–91 (5th Cir.), *cert. denied,* 447 U.S. 910, 100 S.Ct. 2997, 64 L.Ed.2d 861 (1980); *Thibodeaux v. State,* 628 S.W.2d 485, 488 (Tex.App.1982); *Chatman v. State,* 513 S.W.2d 854, 856 (Tex.Cr. App.1979).

■ Texas Penal Code Ann. § 46.03(3) (Vernon Supp.1982–83)[4] does provide an exception for one who is traveling. But the record, apart from Simpson's claim on appeal, does not establish that he was entitled to this exception. The only evidence about travel at the trial came from Gonzales' testimony. According to Gonzales, Burnett indicated on September 21 that the sale would have to take place the following day because his "associate" was in Killeen or "north of Austin."

■ Even assuming that Burnett's "associate" was Simpson, this evidence does not establish Simpson's immunity as a traveler under § 46.03(3). By the time he was arrested in Austin, on the 22nd, Simpson's journey from Killeen to Austin was completed. It is well established that a person's "traveler status" under § 46.03(3) is lost when he arrives at his destination. *See Smith v. State,* 630 S.W.2d 948 (Tex.Cr.App. 1982); *Evers v. State,* 576 S.W.2d 46, 50–51 (Tex.Cr.App.1978); *Kiles v. State,* 398 S.W.2d 568, 569 (Tex.Cr.App.1966); *Ballard v. State,* 74 Tex.Cr. 110, 111, 167 S.W. 340, 340 (1914).

The traveler's exception to § 46.02(a) did not bar Simpson's conviction for violating 18 U.S.C. § 924(c)(2).

### IV.

Simpson contends that the quaaludes found in his trunk on September 22 were discovered pursuant to an unlawful search. In large part, his argument asks us to reconsider the factual findings made by the district court at the suppression hearing. Thus, he argues that Agent Gonzales had taken him into "protective custody" and "ordered" him to open the trunk of his car. As discussed below, the district court credited Agent Gonzales' contrary testimony that Simpson, believing Gonzales was a prospective purchaser, consented to the search.

■ The credibility choices of the district court, based on live testimony at a suppression hearing, are subject to the normal "clearly erroneous" standard of review. *United States v. Freeman,* 685 F.2d 942, 948 n. 3 (5th Cir.1982); *United States v. Vargas,* 643 F.2d 296, 297 (5th Cir.1981) (per curiam); *United States v. Kreczmer,* 636 F.2d 108, 110 (5th Cir.1981). We have re-

---

**3.** Section 46.02(a) provides: "A person commits an offense if he intentionally, knowingly, or recklessly carries on or about his person a handgun ..." Tex. Penal Code Ann. § 46.-03(3) (Vernon Supp.1982–83), provides several specific situations in which a person is not subject to the general prohibition of § 46.02. Moreover, Texas courts recognize a number of judicial exceptions to the rule of § 46.02(a). *See Inzer v. State,* 601 S.W.2d 367, 368–69

(Tex.Cr.App.1980) (collecting cases). Simpson in this appeal asserts only the exemption provided for travelers.

**4.** Section 46.03 provides: "The provisions of Section 46.02 of this Code do not apply to a person: ... (3) traveling." *See generally* Comment, *A Farewell to Arms?—An Analysis of Texas Handgun Control Law,* 13 St. Mary's L.J. 601, 607–09 (1981).

viewed the record of the suppression hearing. We cannot find that the district court's decision to credit Agent Gonzales' testimony was clearly erroneous.

 Gonzales' testimony at the suppression hearing established that he and Simpson pulled into the Holiday Inn parking lot in separate cars. They walked toward each other. Gonzales told Simpson that he wanted to see the drugs before purchasing them. Simpson opened the car trunk and stated that they were in a box in the trunk. Gonzales opened the box, pulled out a bag, opened it, and said that he was satisfied. Simpson closed the trunk and told Gonzales to get his money. Simpson followed Gonzales to Gonzales' car and was arrested.

This was not an illegal search. It resulted from Simpson's invitation. That he was unaware of Gonzales' true identity and mission did not taint Simpson's consent.[5] In *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), an agent posed as a drug purchaser. A dealer agreed to sell marijuana to the agent and invited the agent to his house to complete the purchase. Two purchases were made in this fashion. The Court found that the fourth amendment permitted this governmental action. "During neither of his visits to petitioner's home did the agent see, hear, or take anything that was not contemplated, and in fact intended, by petitioner as a necessary part of his illegal business." *Id.* at 210, 87 S.Ct. at 427, 17 L.Ed.2d at 316. Indeed, the Court explained that a contrary ruling "would come near to a rule that the use of undercover agents in any manner is virtually unconstitutional *per se.*" *Id.* For the reasons explained by the Supreme Court in *Lewis,* we reject Simpson's fourth amendment claim.

### V.

 Simpson argues that the court should have granted his motion for a change of venue because he was tried in San Antonio despite the fact that he and all material witnesses either resided or worked in Austin. He notes that Fed.R.Crim.P. 18 requires that the defendant's convenience be considered in determining venue.

 This claim also is without merit. Conspiracy "by its nature can be 'committed' in a number of places." Venue is proper in any district in which the government shows, by a preponderance of the evidence, that either the agreement or an overt act occurred. *See United States v. Nicoll,* 664 F.2d 1308, 1311 (5th Cir.), *cert. denied,* 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1330 (1982). Inconvenience to a defendant is not alone sufficient to require transfer. A judge's refusal to grant a motion to transfer is reversible only for abuse of discretion. *See United States v. Alvarado,* 647 F.2d 537, 539 (5th Cir.1981); *United States v. Walker,* 559 F.2d 365, 372 (5th Cir.1977). The government demonstrated that Pozos met Agent Gonzales to arrange the deal in San Antonio. No abuse of discretion has been demonstrated.

For these reasons, the judgment is AFFIRMED.

---

**5.** As Professor LaFave has explained:
[W]hen an individual gives consent to another to intrude into an area or activity otherwise protected by the Fourth Amendment, aware that he will thereby reveal to this other person either criminal conduct or evidence of such conduct, the consent is not vitiated merely because it would not have been given but for the nondisclosure or affirmative misrepresentation which made the consenting party unaware of the other person's identity as a police officer or police agent.
2 W. LaFave, Search And Seizure § 8.2(m), at 680 (1978) (footnote omitted).