BEFORE THE THIRD DIVISION, APRIL 29, 1944

**No. 49388.**—Protest 983203–G of S. L. Jones & Co. (Los Angeles).

KEEFE, Judge: The question in this case concerns an importation invoiced as "200 drums Japanese vegetable oil (rice bran oil foots)," the drums being marked, according to the invoice, with the letters "⟨NSC⟩ LOS ANGELES No. 201–400." The merchandise was assessed for duty at 20 percent ad valorem under paragraph 1558, Tariff Act of 1930, as a nonenumerated manufactured article. The plaintiff claims that it is properly dutiable at 10 percent ad valorem under paragraph 1555, as waste.

At the trial counsel for the plaintiff offered in evidence the report of the United States customs laboratory at Los Angeles, dated October 28, 1937, and signed by Edward R. Miller, Chief Chemist, requesting that it be marked exhibit 1 for identification. It was so marked without objection. Such report discloses that a

sample of "rice bran oil foots" was submitted to the laboratory by "Kelly" for "Analysis and adv. class." The chief chemist reported as follows:

The sample consists of a green liquid with a heavy brown sediment. Examination shows it to be a manufactured or partially manufactured nonenumerated article, and is similar in character to that the subject of T. D. 47752.

The foregoing Treasury decision referred to in the report has reference to fatty acids of vegetable oil which were tested in the office of the New York appraiser and found not to be "unsought residues obtained in the refining of crude oil," but, on the other hand, were "valuable byproducts or manufactured products which are designedly sought as desirable subsidiary products in manufacturing operations." In T. D. 47752, the Commissioner of Customs held that such fatty acids are not waste within the meaning of paragraph 1555, but were dutiable as nonenumerated manufactured articles under paragraph 1558 at 20 percent ad valorem. However, the Commissioner stated that nothing in the foregoing ruling should be construed to affect the classification of oil "foots," the unprocessed, unsought residue from the refining of vegetable oils.

United States examiner W. R. Kelly testified for the plaintiff that he had examined the merchandise in question and made a return upon the invoice describing the same and also had made an advisory classification. He testified that at the time of examination he had seen the merchandise. From his recollection it was a dark-colored oil which flowed, fairly freely, and, in accordance with regulations, he had sent a sample thereof to the customs laboratory for analysis. The witness further testified that he did not rely upon the analysis in making his advisory classification because he "knew what it was to begin with"(R. p. 9); that he had examined a great many shipments of similar merchandise and he had knowledge of the character of the merchandise in these similar shipments.

The plaintiff delivered to the customs laboratory in San Francisco a 5-gallon can of oil for analysis. Counsel for the plaintiff requested the court to direct that an analysis of the oil be made by Edward R. Miller, now connected with such customs laboratory and that his report become a part of the record, subject to the oil so analyzed being connected up as a sample from the oil contained in the shipment in question. The Government consented to the analysis without admitting the authenticity of the sample as representative of the imported merchandise, and subject to its being connected up by further evidence.

We find with the papers in the case a laboratory report, dated San Francisco, Calif., June 28, 1941, made from a sample of "rice bran oil foots" submitted by the Customs Court. Such report was signed by Henry L. Alves, Chief Chemist, and Edward R. Miller. The report follows:

The sample consists of rice bran oil containing an appreciable amount of sediment.

Composition:

| | |
|---|---|
| Oil | 89% |
| (rice bran oil 49%; rice bran oil fatty acids 40%). | |
| Sediment | 10% |
| (pressings from rice, polish, etc.). | |
| Moisture | 1% |
| | 100% |

In the opinion of this laboratory, it is rice bran oil foots.

In an effort to connect the sample the subject of the foregoing analysis with the shipment of oil in question counsel for the plaintiff examined three witnesses. The first was the traffic manager of the plaintiff, who was located in San Francisco and had not seen the imported merchandise, and whose testimony was based upon shipping papers, etc. The second witness took a 5-gallon tin of oil from the plaintiff's place of business to the San Francisco customs laboratory

for examination, and the third witness was the bookkeeper of the Snow Brokerage Co. located in Los Angeles.

At the close of the trial counsel for the Government moved to strike out the testimony of these three witnesses on the ground that it had not been shown that the merchandise concerning which testimony was produced was the merchandise involved in this shipment, particularly stressing that the testimony of the traffic manager was hearsay. It was requested that the objections be taken under advisement and the division passing upon the subject matter be allowed to rule upon the admissibility of the evidence. The judge, presiding at the trial, however, overruled the objections and allowed the same to stand.

From a careful review of the evidence produced by these three witnesses, we are unable to find anything to establish that the particular shipment of 200 drums of oil, entered at the port of Los Angeles, was stored in the warehouse of the Snow Brokerage Co. As maintained by the Government, the traffic manager of the plaintiff had never seen the merchandise, identifying it merely through a letter addressed to the plaintiff's customs broker. All we are informed concerning the identity of the oil in the Snow Brokerage Co.'s warehouse is—

S. L. Jones & Co. took delivery of the oil after it had been cleared through the Customs, and it was placed in a warehouse, which was owned * * * and controlled by the Snow Brokerage Co., our Los Angeles agents, where the merchandise remained until it was completely sold * * * (R. pp. 21 and 22).

There is no record that these particular 200 drums marked "⟨NSC⟩ LOS ANGELES No. 201–400," received from Japan on the S. S. *Kosei Maru*, entry No. 11331, were delivered to the warehouse of the Snow Brokerage Co., or that these particular drums were received and stored in the warehouse of said company. In fact, the letter of the traffic manager of plaintiff to the Snow Brokerage Co., requesting a representative sample be shipped them in Los Angeles, describes the merchandise as "Kome oil foots." There is nothing in that description that would connect it with the importation before us. Also the bookkeeper of the Snow Brokerage Co., who caused the sample to be forwarded to the plaintiff, failed to identify the drums from which the oil was taken as a part of the importation in question. In fact, the testimony of the examiner who saw and returned the merchandise together with the customs laboratory report of chemist Miller, fully establishes that the oil stored in the warehouse of the Snow Brokerage Co. was not the particular oil contained in the shipment in question.

Inasmuch as the plaintiff has failed to establish that the 200 drums of oil in question consist of rice bran oil foots, judgment will be entered in favor of the Government.