(g) When a bond is given for the production of any free-entry or reduced-duty document within 6 months from the time of entry and the document is produced after the expiration of the bonded period but prior to the liquidation of the entry, it shall be accepted as satisfying the requirement that it be filed in connection with the entry and no liquidated damages shall be collected under this section. ' * * *

The letter from the collector of customs (exhibit 1) states that the customs officials at the port of entry found the physical characteristics of this alcohol identical with those of numerous other shipments of alcohol distilled by the Cia Operadora Destileria, Sagua la Grande, Cuba, and cleared at the port of entry, and that in general the instant alcohol had the same body as other alcohols distilled by other Cuban distillers and also cleared at this port. The letter further states:

An examination of the shipping documents shows that this shipment was a direct importation from Cuba and was destined for the United States. All indicia stamp this alcohol as of Cuban origin.

The only issue involved in this protest is that of a proper compliance with the customs regulations, section 16.23 (b) and section 25.17 (g) of the Customs Regulations of 1943. * * *

No briefs were filed, but counsel for the plaintiff cited the case of *Wishnatzki & Nathel* v. *United States*, 13 Cust. Ct. 221, C. D. 898. That case involved the question of whether certain vegetables were entitled to a reduction in duty under the provisions of the Cuban Trade Agreement (T. D. 47232). The collector of customs there stated in a memorandum filed with the official papers: ₄

Had a consular invoice been filed or had there been produced a declaration of the shipper or other person having actual knowledge of the facts—that the articles are of the growth, produce or manufacture of Cuba—liquidation would have been made at the rates claimed. However, as evidence of origin was not produced duty was levied as indicated.

At the trial of that case, the importer identified the shipment with that set forth in a letter received by him from a Cuban exporter stating that the goods were sent in accordance with instructions from the growers; and payment was made to Cuba to the growers listed in the letter and the packages were marked "product of Cuba." The court held that the plaintiff had made out a *prima facie* case that the merchandise was a product of Cuba and a direct shipment therefrom. Inasmuch as the collector in the instant case admits that "All indicia stamp this alcohol as of Cuban origin," and that the shipping documents show that this was a direct importation from Cuba, under the authority of the *Wishnatzki & Nathel* case, *supra*, we find that a *prima facie* case has been made out by the plaintiff, and that the alcohol is a product of Cuba and a direct shipment from that country, and as such entitled to the reduced rate of $2 per proof gallon under paragraph 802, Tariff Act of 1930, as modified by the Cuban Trade Agreement (T. D. 47232), and the Mexican Trade Agreement (T. D. 50797).

The claim of the plaintiff is therefore sustained.

Judgment will be rendered accordingly.

**No. 50917.**—Protest 25833–K of Olavarria & Co. (Tampa).

Opinion by EKWALL, J. An examination of the record failing to disclose anything to overcome the presumption of correctness attaching to the collector's action, the protest was overruled.

**No. 50918.**—Protests 42045–K/89611, etc., of Marshall Field & Co. (Chicago).

Opinion by EKWALL, J. In accordance with stipulation of counsel the court found that the facts herein agreed upon were such as to bring the case within the holding in *John Barr* v. *United States* (11 Cust. Ct. 88, C. D. 801), which record was incorporated herein. (See *John Barr* v. *United States*, 324 U. S. 83, decided February 5, 1945.) In accordance therewith it was held that the currency of the invoices should be converted at the buying rate in the New York market at noon on the day of exportation (the "free" rate of exchange for pounds sterling), as certified by the Federal Reserve bank and set forth by the collector on each of the entries. The protests were sustained to this extent.

**No. 50919.**—Protests 56076–K, etc., of Michaels, Stern & Co. et al. (New York)

Opinion by EKWALL, J. In accordance with stipulation of counsel the court found that the facts herein agreed upon were such as to bring the case within the holding in *John Barr* v. *United States* (11 Cust. Ct. 88, C. D. 801), which record was incorporated herein. (See *John Barr* v. *United States*, 324 U. S. 83, decided February 5, 1945.) In accordance therewith it was held that the currency of the invoices should be converted at the buying rate in the New York market at noon on the day of exportation (the "free" rate of exchange for pounds sterling), as certified by the Federal Reserve bank and set forth by the collector on each of the entries involved. The protests were sustained to this extent.

**No. 50920.**—Protest 58645–K of F. R. Heryer (New York).

Opinion by EKWALL, J. In accordance with stipulation of counsel the court found that the facts herein agreed upon were such as to bring the case within the holding in *John Barr* v. *United States* (11 Cust. Ct. 88, C. D. 801), which record was incorporated herein. (See *John Barr* v. *United States*, 324 U. S. 83, decided February 5, 1945.) In accordance therewith it was held that the currency of the invoice should be converted at the buying rate in the New York market at noon on the day of exportation (the "free" rate of exchange for pounds sterling), as certified by the Federal Reserve bank and set forth by the collector on the entry. The protest was sustained to this extent.

BEFORE THE FIRST DIVISION, MARCH 6, 1946

**No. 50921.**—Protests 93813–K, etc., of Alfred Dunhill of London, Inc. (New York).