**COLONIAL METALS CO., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**C.D. 3521; Protests 60/2407-3, etc.**

United States Customs Court,
Second Division.
July 24, 1968.

Siegel, Mandell & Davidson, New York City (Allan H. Kamnitz and David Serko, New York City, of counsel, for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Sheila N. Ziff, New York City, trial attorney), for defendant.

Before RAO, Chief Judge, and FORD, Judge.

RAO, Chief Judge:

The question presented by the protests, listed in the schedule attached to and made part of this decision, which were consolidated for purposes of trial and decision, is whether the 1.7 cents per pound copper content tax provided for in section 4541(1) of the Internal Revenue Code was properly imposed on certain importations of scrap copper and scrap brass from Cuba. · The shipments were permitted entry into the commerce of this country free of customs duty by virtue of the provisions of paragraph 1658 of the Tariff Act of 1930 insofar as the scrap copper importation was concerned (entry W–1436 covered by protest 60/2407), and by virtue of the provisions of paragraph 1634 of said act as regards the scrap brass covered by the other four protests.

Section 4541 of the Internal Revenue Code of 1954 (26 U.S.C. § 4541) provides that—

> In addition to any other tax or duty imposed by law, there is hereby imposed upon the following articles, imported into the United States, unless treaty provisions of the United States otherwise provide, a tax at the rates specified. * * *

The basic rate provided by said code was modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas.Dec. 150, T.D. 54108, and so far as is here pertinent the applicable provision reads as follows:

> 4541 (1) Copper-bearing ores and concentrates and articles provided for in paragraphs 316, 380, 381, 387, 1620, 1634, 1657, 1658, or 1659, Tariff Act of 1930 .............. 1.7¢ per lb. on the copper contained therein.

It is the contention of plaintiff that the importations of the scrap metal involved herein should have been permitted without the imposition of the Internal Revenue copper tax in view of the terms of the Cuban Reciprocity Treaty of 1902, of section 316 of the Tariff Act of 1930, and of the Cuban Trade Agreement of August 24, 1934. The pertinent language of these statutes reads:

Cuban Reciprocity Treaty of 1902, effective December 27, 1903—

ARTICLE I.

During the term of this convention, all articles of merchandise be-

ing the product of the soil or industry of the United States which are now imported into the Republic of Cuba free of duty, and all articles of merchandise being the product of the soil or industry of the Republic of Cuba which are now imported into the United States free of duty, shall continue to be so admitted by the respective countries free of duty.

Section 316 of the Tariff Act of 1930—

## SEC. 316. CUBAN RECIPROCITY TREATY NOT AFFECTED.

Nothing in this Act shall be construed to abrogate or in any manner impair or affect the provisions of the treaty of commercial reciprocity concluded between the United States and the Republic of Cuba on December 11, 1902, or the provisions of the Act of December 17, 1903, chapter 1.

Cuban Trade Agreement of August 24, 1934—

## ARTICLE I.

During the term of this Agreement, all articles the growth, produce or manufacture of the United States of America which would have been admitted free of duty if imported into the Republic of Cuba on the day of signature of this Agreement, and all articles the growth, produce or manufacture of the Republic of Cuba which would have been admitted free of duty if imported into the United States of America on the day of signature of this Agreement, shall be so admitted by the respective country free of duty.

Against the foregoing background, two questions are presented to the court for determination. Satisfactory proof must be presented on each of said points for plaintiff herein to obtain the relief it seeks. The first question is whether the record will support a holding that the scrap copper and scrap brass involved are products of the soil or industry of the Republic of Cuba. The second question to be resolved is whether scrap copper and scrap brass were, on the effective date of the Cuban Reciprocity Treaty of 1902, being imported free of duty into the United States from Cuba.

In support of its position on the first of the foregoing questions, plaintiff introduced into evidence certificates relating to the merchandise covered by four of the protests, which were received as plaintiff's collective exhibit 2, and another certificate in connection with the remaining importation, which was received in evidence as plaintiff's exhibit 4. These documents, prepared in the name of Camilo V. Aguirre, who appears in the entry papers as the seller of the merchandise in issue, differ only as to dates of preparation of the certificate and shipment of the merchandise, in car number, and in entry number. As typical, we quote below the certificate for merchandise covered by entry W–1436, which is the subject of protest 60/2407 and protest 60/2408:

We hereby certify that the Scrap Copper and Scrap Brass material shipped by us on March 19, 1959, car CBQ–61869 on board the SS JOSEPH R. PARROTT and entered at WEST PALM BEACH, FLORIDA, U.S.A., under entry #W–1436, was of the growth, produce and manufacture of Cuba.

Said certificates were evidently prepared in compliance with the provisions of Customs Regulation 16.23, which read in part as follows:

*16.23 Cuban preference.*—(a) * * *.

(b) * * * In the case of every shipment of Cuban articles for which any total or partial exemption from duty is sought under the provisions of the Cuban Trade Agreement, except as stated in the next sentence, there shall be filed in connection with the entry, preferably on the invoice filed with the entry, a declaration of

the shipper, or other person having actual knowledge of the facts, that the articles for which exemption is sought are of the growth, produce, or manufacture of Cuba. * * *

The certificates comprising collective exhibit 2 were not filed "in connection with the entry" as required by Customs Regulation 16.23 and, except as regards entry W–1991 accompanying protest 60/10833, said certificates indicate that they were filed with the collector of customs office in Tampa after the statutory period granted to the collector for review of his protested decisions, and the certificate in evidence as exhibit 4 bears no indication on its face that it was filed with the collector within time or otherwise.

Defendant seeks to negate the evidentiary value of plaintiff's collective exhibit 2 and of exhibit 4 on the grounds that they were not timely filed and, further, that they contained unsworn conclusory statements.

■ There is precedent for holding, as referred to by plaintiff in its brief, that failure on the part of the plaintiff to file the required declarations "in connection with the entry" as specified in Customs Regulation 16.23(b) need not prove to be a fatal lapse. (Wishnatzki & Nathel v. United States, 13 Cust.Ct. 221, C.D. 898, which was followed in Oldetyme Distillers, Inc. v. United States, 16 Cust.Ct. 231, Abstract 50916.) In the absence of such compliance claimant must prove by satisfactory evidence that the merchandise in controversy was the product of the soil or industry of Cuba. In the *Wishnatzki* case, supra, plaintiff identified the shipment of eggplants and cucumbers there involved as that of a Cuban exporter, showed that the payment therefor had been made to Cuban growers of the merchandise, and that the packages involved were marked "Product of Cuba." The court there held that despite the absence of certificates of origin the evidence produced made out a *prima facie* case for plaintiff.

The reasoning in the *Wishnatzki* case was followed in Oldetyme Distillers, Inc. v. United States, supra, involving eight barrels of Cuban alcohol. Instead of the shipper's declaration of "growth, produce, or manufacture of Cuba" called for in Customs Regulation 16.23(b), the plaintiff introduced in evidence a letter from the collector of customs at the port of entry to the office of the Assistant Attorney General stating that the customs officials at the port of entry found the physical characteristics of the alcohol there in issue to be identical with those of numerous other forms of alcohol distilled by the same distillery in Cuba, and that all indicia pointed to the fact that the alcohol was of Cuban origin. Such proof was held by the court in that case to constitute *prima facie* evidence that the alcohol involved was a product of Cuba.

■ In the case presently at bar, however, no evidence has been presented to the court to support a finding that the merchandise at bar was the product of the soil or industry of Cuba. Plaintiff in its brief looks for support of its claim in this regard to the invoice and entry papers, citing the case of United States v. Bloomingdale Bros. & Co., 10 Ct.Cust. Appls. 149, 152, T.D. 38400. However, it has been held that invoices and papers accompanying the entries are not sufficient, standing alone, to overcome the presumption of correctness accompanying the classification of merchandise by a collector of customs. United States v. Hercules Antiques et al., 44 CCPA 209, C.A.D. 662.

■ Although plaintiff's collective exhibit 2 and exhibit 4, if filed as provided in Customs Regulation 16.23(b), might have been sufficient for a collector of customs to liquidate the entries free of the copper content tax provided by the Internal Revenue Code, said certificates are devoid of evidentiary value in a judicial proceeding. Moreover they contain nothing more than unsubstantiated conclusions of ultimate facts and do not provide any basis upon which this court may hold that the imported merchandise was the product of the soil or industry of Cuba.

In view of the dual burden resting upon plaintiff in order to succeed in this case to which reference was made, supra, and its failure to support the first of said burdens, it would serve no purpose for us to give consideration to whether or not scrap copper and scrap brass were on the effective date of the Cuban Reciprocity Treaty of 1902, being imported free of duty into the United States from Cuba.

Upon the record before the court and for the reasons above set forth, we hold that all claims in the protests involved herein must be overruled.

Judgment will be rendered accordingly.