(C.D. 4398)

C. J. Tower & Sons of Niagara, Inc. *v.* United States

United States Customs Court, First Division

(Decided January 4, 1973)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Irving Levine* of counsel) for the plaintiff.

*Harlington Wood, Jr.,* Assistant Attorney General (*Bernard J. Babb* and *Martin Kirshner,* trial attorneys), for the defendant.

Before Watson, Maletz and Re, Judges

Watson, Judge: The issue raised by this protest centers on the origin of the coconut oil content of an importation of sodium acyl coco isethionate (hereinafter called SACI) from Canada. Plaintiff protests only the assessment of an import tax of 2 cents per pound on the coconut oil content under sections 4581 and 4511(b) of the Internal Revenue Code of 1954, as amended by T.D. 53965.[1] Plaintiff claims the

---

[1] 4581. Imposition of Tax.

In addition to any other tax or duty imposed by law, there is hereby imposed upon the

exemption provided for in section 4513(b) of the Internal Revenue Code [2] for coconut oil which "was produced wholly from materials the growth or production of the Philippine Islands * * *." The basic issue in this case is therefore whether or not the coconut oil content of the imported SACI originated in the Philippine Islands.

Plaintiff makes a two-pronged argument in support of its claim; first, that it has presented evidence "establishing an unbroken chain of events whereby Philippine coconut oil was transported and then transformed * * * into the SACI here under protest" and second, that it has now cured what it considers the only defect in its claim for exemption on the Bureau of Customs level—an improperly filled out certificate of origin for one of the shipments of oil in question.

The first argument is the only one worthy of consideration here since it reflects an understanding of plaintiff's burden of proof in this action. The second argument is unacceptable because it assumes that proof of a proposition in a court of law is the same as satisfactory proof on the administrative level. Even were we to accept completely plaintiff's version of what went on at the Bureau of Customs level and find that but for a defective certificate of origin for one shipment of coconut oil plaintiff would have received the tariff treatment it desired for the entire SACI importation, it would not be enough for plaintiff to prove its case by simply producing a proper certificate of origin or testimony on that point. Facts which may have been accepted as established by the administrative officials are not automatically estab-

---

following articles imported into the United States, unless treaty provisions of the United States otherwise provide, a tax at the rates set forth, to be paid by the importer—

Any article, merchandise or combination (except oils specified in section 4511), 10 percent or more of the quantity by weight of which consists of, or is derived directly or indirectly from, one or more of the products specified in sections 4561 and 4571, or of the oils, fatty acids, or salts specified in section 4511, a tax at the rate or rates per pound equal to that proportion of the rate or rates prescribed in sections 4561 and 4571 or section 4511 in respect of such product or products which the quantity by weight of the imported article, merchandise, or combination, consisting of or derived from such product or products, bears to the total weight of the imported article, merchandise, or combination.

4511. Imposition of Tax.

* * * * * * *

(b) Additional rate on coconut oil.

There is hereby imposed (in addition to the tax imposed by the preceding subsection) a tax of 2 cents per pound to be paid by the processor, upon the first domestic processing of coconut oil or of any combination or mixture containing a substantial quantity of coconut oil with respect to which oil there has been no previous first domestic processing.

[2] 4513. Exemptions.

* * * * * * *

(b) From additional tax on coconut oil.

The additional tax imposed by section 4511(b) shall not apply when it is established, in accordance with regulations prescribed by the Secretary or his delegate, that the coconut oil (whether or not contained in a combination or mixture)—

(1) is wholly the production of the Philippine Islands, any possession of the

lished for the purposes of the ensuing legal action.[3] Once the importer's desired tariff treatment has been denied all the facts necessary to obtain such treatment must be proved in court either by stipulations, admissions or positive proof in accordance with the burden of proof too well established to need citation here.

Accordingly, the only proper method of proof undertaken herein to establish the origin of the coconut oil at issue is that expressed in plaintiff's first argument; an attempt to prove the chain of events by which coconut oil from the Philippine Islands was incorporated into the imported SACI.[4]

According to plaintiff, the imported SACI contains Philippine coconut oil derived from two shipments, one via the SS *Sarangan* directly to Toronto, Canada where Lever Brothers transformed it into partially hardened fatty acid and shipped it to Guelph, Ontario where Hart Products Co. of Canada, Limited used it as an ingredient in the manufacture of the imported SACI, the other via the SS *Teverya* to New York where it was transferred to two freight cars and shipped to Toronto from which point it followed the same path as the *Sarangan* shipment. Since it is evidently not possible for plaintiff to associate each entry of SACI with the shipment from which its coconut oil content is alleged to have been derived, the necessary proof must be complete as to both shipments.

Concerning the *Teverya* shipment, there is satisfactory proof, by deposition of the assistant plant manager of the Philippine exporter, that it consisted of coconut oil derived from copra (dried coconut meat) of Philippine growth. There is, however, no comparable proof of record that the *Teverya* shipment was unloaded at New York and transferred to railroad boxcars. After this fatal break in proof of the chain of events, plaintiff's proof resumes with testimony by the buying manager of Lever Brothers in Toronto that he bought two cars of Philippine coconut oil through a broker, J. H. Redding, with the cars

United States, or the Territory of the Pacific Islands (hereinafter in this paragraph referred to as the "Trust Territory"), or

(2) was produced wholly from materials the growth or production of the Philippine Islands, any possessions of the United States, or the Trust Territory:

*Provided, however,* That such additional tax shall apply in respect of coconut oil (whether or not contained in a combination or mixture) so derived from the Trust Territory, to such extent, and at such time after the date of the applicable proclamation, as the President, after taking into account the responsibilities of the United States with respect to the economy of the Trust Territory, shall hereafter determine and proclaim to be justified to prevent substantial injury or the threat thereof to the competitive trade of any country of the free world.

[3] This is particularly the case where, as here, there are no specific customs regulations governing this matter and the customs officials evidently have a wide range of discretion in the proof of origin they will accept.

[4] Meaningful analogies can be drawn to situations in which the admission of objects into evidence is dependent on proof of their authenticity or source. See, for example, *Wigmore on Evidence* § 2129 (1940 ed.). See also, Annot., 95 ALR 2d 681, § 4. *Cf. S. L. Jones & Co.* v. *United States,* 12 Cust. Ct. 303, Abs. 49388 (1944).

coming from Lever Brothers in New York. From that point the testimony establishes that the oil from the two boxcars was processed separately by Lever Brothers of Toronto and kept identifiably separate in shipments to Hart Products Co. where it was incorporated into the imported SACI.

Concerning the *Sarangan* shipment, there is no proof, even remotely comparable to that offered in connection with the origin of the *Teverya* shipment, to support the allegation of its Philippine origin. Attempted proof of origin of the *Sarangan* shipment begins and ends with the testimony of the buying manager of Lever Brothers in Toronto as follows:

> Q. Did you buy anymore [sic] coconut oil in 1962, Philippine coconut oil?—A. Yes; there was another shipment in March of '62, which 300 tons came directly to Toronto.
> Q. On what steamer?—A. The "Sarangan."

From that point the testimony establishes that the *Sarangan* shipment was treated in the same separate and identifiable manner until it was incorporated into the imported SACI.

It is apparent that plaintiff's proof of origin of both involved shipments of coconut oil is defective; the defect in both instances being the absence of a suitably informed witness or relevant documentary evidence to supply proof of a crucial link in the chain of events connecting the coconut oil content of the imported SACI to the Philippine Islands.[5] We cannot give significant weight to the testimony of even the best intentioned witness, when his knowledge as to the source of his purchase is limited to his own side of the transaction.[6] The specific defects which we find in plaintiff's proof relate to the origin of the oil comprising the *Sarangan* shipment and the transfer of the *Teverya* shipment to the boxcars received by Lever Brothers in Toronto. Without specific proof of these points, plaintiff fails to show that it was Philippine coconut oil which was separately and identifiably processed and ultimately incorporated into the imported SACI.

For the above reasons, the assessment of an import tax of 2 cents per pound on the coconut oil content of the imported SACI was correct and plaintiff's claim for exemption from this assessment must be overruled.

Judgment will issue accordingly.

---

[5] There was some testimony to the effect that Philippine coconut oil possessed certain characteristics which distinguished it from other coconut oils but this possible alternative method of proof was not further developed.

[6] See, *Migliavacca Wine Company* v. *United States,* 10 Treas. Dec. 406, T.D. 26777 (1905). See also *Wishnatzki & Nathel* v. *United States,* 13 Cust. Ct. 221, C.D. 898 (1944) ; *Oldetyme Distillers, Inc.* v. *United States,* 16 Cust. Ct. 231, Abs. 50916 (1946).