**R.J.F. FABRICS, INC., Plaintiff,**

v.

**The UNITED STATES, the United States Customs Service, Regional Commissioner of Customs at New York, and the Area Director of Customs at Newark, Defendants.**

**Court No. 86–11–01376.**

United States Court of International Trade.

Dec. 22, 1986.

Soller, Singer & Horn (Melvin E. Lazar, Gerald B. Horn, and Carl R. Soller) for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, International Trade Field Office, Commercial Litigation Branch, U.S. Dept. of Justice (Florence M. Peterson), for defendants.

## OPINION & ORDER

TSOUCALAS, Judge:

This action is before the Court on motion of the federal defendants [hereinafter collectively referred to as "defendant" or "United States"] to stay during the resolution of criminal proceedings instituted in the District Court for the Southern District of New York; or alternatively, for a protective order, pursuant to USCIT R. 26(c), limiting discovery by plaintiff. The factual background of this case was discussed in a recent opinion in which the Court exercised jurisdiction over plaintiff's claim. *See R.J.F. Fabrics, Inc. v. United States,* 10 CIT ——, 651 F.Supp. 1431 (1986).[1] Therefore, this opinion will focus only on those developments germane to the issue presently under consideration.

---

1. The Court also denied a motion for a preliminary injunction turning over custody of the textiles to plaintiff. *See R.J.F. Fabrics, Inc.,* at 1437.

## Background

This action concerns the alleged transshipment of textiles from Korea to Japan and the attempted entry into the United States of these textiles under allegedly false documents in an attempt to violate quota restraints. The investigation of plaintiff is part of a wider probe begun early in 1984 and initially based in California. From that beginning, the inquiry by Customs spread both domestically to the East Coast, and internationally, to Korea, Japan, Singapore, and Canada. Defendant alleges that significant evidence of fraudulent entry of more than 50 million yards of fabric was uncovered. Ms. Deirdre Daly, an Assistant United States Attorney, was assigned responsibility for the criminal case in November, 1985. In connection with the criminal investigation, a number of search warrants were issued, including one dated Aug. 11, 1986, which was directed against plaintiff's premises in New York.

The subject merchandise was first denied entry[2] on July 2 and July 11, 1986, and later seized by the Customs Service pursuant to 19 U.S.C. § 1592 (1982) and 18 U.S.C. § 545 (1982). Jurisdiction over the action was assumed for the purpose of issuing a declaratory judgment as to the true country of origin of the goods. On Dec. 9, 1986, the Court issued a scheduling order setting Jan. 6, 1987 as the trial date and fixing Dec. 22, 1986 for the completion of discovery. That order was later amended at the request of the parties, to allow plaintiff to depose one of defendant's witnesses on Jan. 5, 1987, and to reschedule trial for Jan. 7, 1987. Following the presentation of the criminal case against plaintiff to a grand jury sitting in the Southern District of New York, defendant, on Dec. 16, 1986, filed the instant motion. Also on that date, Mr. Mark Cassuto, described by defendant as plaintiff's buying agent,[3] was arrested on a warrant issued by a United States Magistrate. At a deposition held on Dec. 17, 1986, Mr. Isaac Cavaliero, Secretary/Treasurer of plaintiff, invoked his Constitutional privilege against self-incrimination after giving his name, address, phone number, and occupation.

At the request of plaintiff's counsel, on Dec. 17, 1986, a conference was held in chambers, with a court reporter present, between the Court, counsel for the parties, Ms. Deirdre Daly, an Assistant United States Attorney, Ms. Deborah Rand, Assistant Regional Counsel for Customs, and Mr. Steven Yagoda, a criminal investigator for Customs.[4] Over plaintiff's objection, the Court viewed, *in camera*, certain materials presented by Ms. Daly and Mr. Yagoda, relevant to Customs' investigation of the alleged transshipment scheme.

## The Motion for a Stay

Defendant urges the Court to stay this action now that a grand jury has heard the case against plaintiff presumably regarding alleged violations of 18 U.S.C. § 542 (1982) and 18 U.S.C. § 545 (1982).[5] Defend-

---

2. Customs instituted "live" entry procedures, effective July 7, 1986, with respect to certain textiles reputed to be products of Japan. This type of entry prevents the importer from exercising immediate delivery privileges. 51 Fed.Reg. 23,736 (1986).

3. At a conference with the Court, plaintiff's counsel, without elaboration, denied that Mr. Cassuto was plaintiff's buying agent. Mr. Cassuto's attorney, in a letter to defendant, has described his client as acting as an "importer's agent." Further, he explained that Mr. Cassuto has been advised to assert his fifth amendment privilege at a deposition to be held on Dec. 22, 1986. Letter from Angelo T. Cometa to Florence M. Peterson (Dec. 18, 1986).

4. Plaintiff's counsel, indicating that they did not wish to delay resolution of the motion, declined to submit papers in response to defendant's motion. As explained in the text, however, counsel for plaintiff participated in the conference with the Court.

5. 18 U.S.C. § 542 (1982) provides in pertinent part:

> **§ 542. Entry of goods by means of false statements**
>
> Whoever enters ... into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement,....
>
> Shall be fined for each offense not more than $5,000 or imprisoned not more than two years, or both.

ant fears that the criminal prosecution against this plaintiff as well as the larger investigation into the problem of transshipment will be compromised. *Defendant's Motion to Stay* at 11. The Assistant United States Attorney in charge of this matter has opined that:

> the continuation of this civil case in the United States Court of International Trade will impede the ongoing criminal investigations conducted by this office and special agents of the United States Customs Service, and will result in the disclosure of confidential investigatory procedures which will impair these and future investigations.

*Defendant's Motion to Stay*, Attachment F, Affidavit of Deirdre Daly at 3, ¶ 14.

Defendant insists that the country of origin issue in the civil litigation is necessarily intertwined with the subject matter of the criminal proceeding, and one cannot be neatly extricated from the other. Not only will disclosure under the liberal civil discovery rules thwart other investigations into transshipment, but it will also give plaintiff access to material it could not discover under the rules of criminal procedure. Defendant's ability to conduct discovery has been frustrated by Isaac Cavaliero's exercise of his fifth amendment privilege, as well as by the arrest of Mark Cassuto. Finally, under its interpretation of Fed.R.Crim.P. 6(e), no discovery may be had of matters presented before the grand jury without authorization of the district court which impanelled the grand jury.[6] Thus, absent such authorization, defendant,

could not fulfill plaintiff's broad discovery requests. These include a notice of intent to depose several Customs special agents, the Customs attache in Tokyo, and a foreign national employed by Customs, as well as a request for the production of all documents or objects, relating to the exclusion and seizure of the subject textiles, including:

> [a]ll records, notes, reordings [sic] and/or other documents or objects relating to the exclusion, detention and seizure of the merchandise ... including but not limited to, reports of investigation, correspondence, telexes, bills of lading, air waybills, transcripts of conversations, affidavits, laboratory analyses, and any other documents or objects which purport to establish the country of origin of the subject merchandise.

*Defendant's Motion to Stay*, Attachment E, Plaintiff's Notice of Taking Deposition and for Production of Things at 2.

Given all of the foregoing, defendant contends that the best course for this Court to follow is to exercise its discretion to stay this action pending resolution of the criminal case against plaintiff.

Plaintiff's response, as best the Court can comprehend it, is that the pending criminal proceedings, still in the pre-indictment stage, should not interfere with its ability to conduct discovery in a properly commenced civil case. In any event, the possibility of an indictment should represent an opportunity for the potential criminal defendant, not the government, to seek a stay.

---

18 U.S.C. § 545 (1982) provides in pertinent part:

**§ 545. Smuggling goods into the United States**

Whoever knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or

....

Shall be fined not more than $10,000 or imprisoned not more than five years, or both.

6. Fed.R.Crim.P. 6(e)(3) provides in relevant part:

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding;

....

(D) A petition for disclosure pursuant to subdivision (e)(3)(C)(i) shall be filed in the district where the grand jury convened.

The Court does not rely on defendant's interpretation of Rule 6(e) and accordingly expresses no opinion as to its accuracy.

## Discussion

Numerous cases support the proposition that a court properly vested with jurisdiction may exercise broad discretion in deciding to stay a civil action in favor of a related criminal proceeding. *See United States v. Kordel,* 397 U.S. 1, 11–12, 90 S.Ct. 763, 769, 25 L.Ed.2d 1 (1970); *Mid-America's Process Service v. Ellison,* 767 F.2d 684, 687 (10th Cir.1985); *Campbell v. Eastland,* 307 F.2d 478, 487 (5th Cir.1962), *cert. denied,* 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963); *Founding Church of Scientology v. Kelley,* 77 F.R.D. 378, 380–81 (D.D.C.1977); *SEC v. Control Metals Corp.,* 57 F.R.D. 56, 57 (S.D.N.Y.1972); *United States v. One 1964 Cadillac Coupe De Ville,* 41 F.R.D. 352, 353–54 (S.D.N.Y. 1966); *United States v. Parrott,* 248 F.Supp. 196, 201–02 (D.D.C.1965). The Court believes that given the developments in the criminal investigation, a temporary stay of the instant action would best serve the interests of justice. In particular, given the similarity of issues between the two cases, this Court, in accord with other courts that have considered the question of parallel proceedings, is concerned that there is a strong potential for the misuse of the civil discovery process. *See, e.g., United States v. Phillips,* 580 F.Supp. 517, 518–19 (N.D.Ill.1984) citing *Campbell v. Eastland,* 307 F.2d at 487.[7]

It is well known that discovery in federal criminal cases, governed largely by the Federal Rules of Criminal Procedure, is more restrictive than in civil cases. *See United States v. Fischel,* 686 F.2d 1082, 1090–91 (5th Cir.1982). *Compare* Fed.R. Crim.P. 15–17 *with* USCIT R. 26–37. For example, depositions, which are routine vehicles for civil discovery, are not favored in criminal cases. *Fischel,* 686 F.2d at 1091; *see also* Fed.R.Crim.P. 15(a) advisory committee's note ¶ 2 ("It was contemplated that in criminal cases depositions would be used only in exceptional situations, as has been the practice heretofore"). Further, in

criminal cases, 18 U.S.C. § 3500 generally bars a defendant's access to statements or reports of a government witness until that witness has testified on direct examination at trial. 18 U.S.C. § 3500(a) (1982); *see also* Fed.R.Crim.P. 16(a)(2) (discussing discovery of government reports and statements of government witnesses). Should the grand jury return an indictment, the Court is wary of allowing plaintiff to gain an impermissible advantage in a possible criminal trial by virtue of pre-trial activity in this action.

The Court has considered those factors which might militate against ordering a stay, but, on balance, concludes that defendant's motion should be granted. For example, that the criminal proceeding is in the pre-indictment phase does not dictate that a halt to discovery is inappropriate. *See In Re Application of Eisenberg,* 654 F.2d 1107, 1113 (5th Cir.Unit B 1981) (prelitigation discovery request denied where petitioner was subject of pending grand jury investigation). *See also Brock v. Tolkow,* 109 F.R.D. 116, 119 n. 2 (E.D.N.Y. 1985) (lack of indictment is merely a factor to be considered in deciding motion to stay civil proceedings).

The fact that the government, and not the private party, seeks a stay in the instant case is not necessarily fatal to its application for a stay. *See United States v. Phillips,* 580 F.Supp. at 519 (government's motion to halt discovery in state court action granted). It may be true that "the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *SEC v. Dresser Indus.,* 628 F.2d 1368, 1375–76 (en banc), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). But there is no indication that deferral of the civil action is limited to those situations implicating the aforementioned "strongest case." In other

---

**7.** This case, involving proceedings in two *federal* courts, presents an even more compelling argument for granting a stay than that in *Phillips,*

since it does not implicate the historic reluctance of the federal courts to interfere with state court actions. *Cf. Phillips,* 580 F.Supp. at 519.

 

words, where the private party institutes the civil litigation, the government is not precluded from successfully moving for a stay. *See also United States v. Kordel,* 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 770 n. 27, 25 L.Ed.2d 1 (1970) (emphasizing broad discretion of courts to stay civil proceedings at request of prosecutor or criminal defendant).

Finally, there are potential difficulties for plaintiff if the instant action proceeds along with the criminal proceedings. The Court is mindful that parallel civil and criminal actions are Constitutionally sanctioned, and that it is the importer, plaintiff in the instant case, not the government, that seeks to actively continue the civil litigation. Despite this, the Court is concerned with putting principals of the plaintiff to the choice of actively participating in the civil case, to the detriment of their possible criminal defense; or alternatively, as has already happened, refusing to participate in the civil case, thereby injuring its chances for success. *See Brock v. Tolkow,* 109 F.R.D. at 120.

### Conclusion

In light of all the foregoing considerations, and in recognition of the public interest in protecting the commerce of the United States from the possible criminal violation of its import laws,[8] the Court believes that, at least for the present time, the criminal proceedings should be allowed to develop in an unimpeded manner. Accordingly, in exercise of its inherent power to stay proceedings, *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 165, 81 L.Ed. 153 (1936) (Cardozo, J.), the Court orders that this action be stayed for a period of twenty-one (21) days from the date of this order. In so ordering, the Court recognizes that developments in this action have been forthcoming on almost a daily basis. Therefore, at the expiration of this order, the Court will review the relevant circumstances, including any progress in the criminal proceedings. At that time, the Court will decide whether to allow discovery to resume, and if so, under what limitations.

---

8. The Court stresses that it expresses no opinion either as to the outcome of the grand jury investigation or as to the merits of plaintiff's claim in the instant litigation.